UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE VAN HOOK,<br><br>        Plaintiff,<br><br>    v.<br><br>WEST CONTRA COSTA COUNTY UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | Case No. 21-cv-02945-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

## I. INTRODUCTION

Plaintiff Denise Van Hook, an African-American woman who is employed by Defendant West Contra Costa Unified School District ("District"), brings claims of racial discrimination and retaliation against the District, its superintendent, Matthew Duffy, and various other individuals employed as administrators by the District. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing scheduled for April 15, 2022 at 9:30 a.m. pursuant to Civil Local Rule 7-1(b). The Initial Case Management Conference set for the same date will be held at 2:00 p.m. instead of 9:30 a.m**. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

### A. Second Amended Complaint

Plaintiff alleges in the Second Amended Complaint ("SAC"), which is the operative complaint in this case, that she is a longtime employee of the District and served as the Principal at

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1  Pinole Middle School for nine years. SAC ¶ 11. Her contract as the Principal ended on June 30,
2  2020. *Id.* According to Plaintiff, during her tenure as Principal, she achieved good test scores and
3  improved teacher retention. *Id.*

4  Plaintiff alleges that on October 18, 2018, she filed a race discrimination complaint after
5  learning that a "certain manager" commented that she had "hired another black person again." *Id.*
6  ¶ 12. Plaintiff was offended by the comment, which she perceived to be racist. *Id.* According to
7  Plaintiff, the District acknowledged her complaint and assured her that it would be addressed but
8  failed to investigate or take any action in response to the complaint. *Id.*

9  Plaintiff alleges that on November 29, 2018, she reported racial discrimination to
10 Defendants Anne Shin and Julio Franco on behalf of an African-American counselor. *Id.* ¶ 13.
11 According to Plaintiff, Shin and Franco were and continue to be executive directors of the District.
12 *Id.* ¶¶ 6-7. Plaintiff alleges that the District again failed to respond, investigate, or take any action
13 in response to the complaint. *Id.* ¶ 13.

14 Plaintiff alleges that in February 2019, she learned that a list of ten administrators to be
15 fired, including Plaintiff, was circulating in her workplace and that most of the administrators on
16 the list were Black. *Id.* ¶ 14. She alleges on information and belief that Defendants Franco and
17 Shin were responsible in part for the inclusion of Plaintiff on this "race-based termination list."
18 *Id.*

19 Plaintiff alleges that on September 2019, Defendant Marci Williams, an assistant
20 superintendent of the District, tried to enlist Plaintiff to take action against a subordinate
21 employee, a Black female, that Plaintiff believed was unwarranted and racially motivated. *Id.* ¶¶
22 8, 15. Plaintiff alleges that because she refused to participate in this discriminatory conduct she
23 became the subject of retaliation by the District. *Id.* ¶ 15. According to Plaintiff, on November 4,
24 2019, she filed an internal complaint based on a racially hostile work environment and retaliation.
25 *Id.* ¶ 16. She alleges that Defendants Sylvia Greenwood, the District's director of Human
26 Resources, and Julio Franco were aware of her protected activity and that in December 2019,
27 Greenwood told Plaintiff verbally that her complaint was unfounded. *Id.* She further alleges that
28 the District failed to investigate or take any action in response to the complaint. *Id.*

Plaintiff alleges that in December 2018, she and a white Principal met with Defendant Matthew Duffy, the superintendent of the District, and discussed "certain administrative decisions involving the junior high schools, Pinole Middle School and Juan Crespi Middle School." *Id.* ¶¶ 5, 17. According to Plaintiff, following that meeting, the white Principal disclosed the content of the discussions to his staff at Juan Crespi Middle School and Duffy said nothing, even though he was aware that the white Principal had disclosed this information. *Id.* ¶ 16. In contrast, when Duffy learned that Plaintiff had disclosed the same information to her staff, Duffy became extremely angry with Plaintiff and reprimanded her. *Id.* Plaintiff alleges that prior to engaging in this differential treatment of the two Principals, Duffy had not told her that he did not want the information disclosed to members of her staff. *Id.*

Plaintiff alleges that on February 25, 2020, Defendants Williams and Greenwood informed her that the District intended to demote her from Principal to Teacher. *Id.* ¶ 18. She further alleges that Defendants Duffy, Franco, Shin, Williams and Greenwood each participated in the decision to demote her. *Id.* According to Plaintiff, she requested an explanation of the reasons for her demotion and on March 10, 2020, the District responded with a letter confirming its intent to reassign and demote Plaintiff and providing the claimed reasons for the reassignment. *Id.* ¶ 19.

Plaintiff alleges that she was informed on May 8, 2020 that her position as Principal was going to be posted. *Id.* On the same date, she received an e-mail reassigning her to a position as a teacher at Peres Elementary School for the 2020-2021 school year. *Id.* ¶ 20. According to Plaintiff, she learned in August 2020 that her annual compensation has been reduced by more than $10,000 as a result of the reassignment. *Id.* She alleges that in June 2020, the District hired a less qualified white male to replace her as Principal at Pinole Middle School. *Id.*

Plaintiff alleges that on July 10, 2020, she exhausted her administrative remedies by submitting dual complaints of race discrimination and retaliation to the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 23. According to Plaintiff, DFEH issued a Notice of Case Closure and Right to

3

Sue on April 27, 2021. *Id.*[2]

Plaintiff alleges that on September 9, 2020, she submitted a government tort claim to the District, which was rejected on October 23, 2020.

Based on these allegations, Plaintiff asserts the following claims in the SAC: 1) Retaliation under Title VI, asserted against the District (Claim One); 2) Retaliation under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment, asserted against the individual defendants (Claim Two); 3) Retaliation under 42 U.S.C. § 1981, asserted against all defendants (Claim Three); 4) Race Discrimination under 42 U.S.C. § 1981, asserted against all defendants (Claim Four); 5) Race Discrimination under 42 U.S.C. § 1983 based on violation of the Equal Protection Clause of the Fourteenth Amendment, asserted against the individual defendants (Claim Five); 6) Race Discrimination under Title VI, asserted against the District (Claim Six); 7) violation of California Civil Code section 52.1 (Unruh Act), asserted against all defendants (Claim Seven); 8) Retaliation under California FEHA, asserted against the District (Claim Eight); 9) Race Discrimination under California FEHA, asserted against the District (Claim Nine).

**B.  The Motion**

In the Motion, Defendants argue that Plaintiff fails to state a claim under Rule 12(b)(6) as to many of the claims asserted in the SAC. In particular, they argue as follows:

1) Claims One and Six, for retaliation and race discrimination under Title VI, fail as a matter of law and fail to allege sufficient facts.

2) Claims Three and Four, for violation of 42 U.S.C. § 1981, are not cognizable as to the District and fail to state a claim as to any Defendant because the SAC does not allege facts regarding the impairment of a contractual relationship.

3) Claim Seven, for violation of the Unruh Act, fails to state a claim as to all Defendants.

4) Claims Five and Nine, for race discrimination under 42 U.S.C. § 1983 and FEHA, respectively, fail to state a claim because Plaintiff alleges no facts showing racial animus.

Plaintiff does not oppose the Motion with respect to the challenges to Claims One and Six

---

[2] In support of her Opposition to the Motion, Plaintiff submitted a declaration of counsel stating that the EEOC issued a right-to-sue letter on November 8, 2021. Price Decl., ¶ 2(a).

(the Title VI claims) and Claim Seven (the Unruh Act claim). She also concedes that Claims Three and Four fail to state a claim as to the District and that Claim Five fails to state a claim as to individual Defendants Franco, Shin, Williams and Greenwood. Therefore, the Motion is GRANTED as to those claims, which are dismissed with prejudice.

Plaintiff opposes the Motion as follows: 1) she contends her claims under 42 U.S.C. § 1981 (Claims Three and Four) are adequately alleged as to the individual defendants because Section 1981 covers discriminatory demotions by an employer, as well as retaliation, and Defendants' narrow reading of Section 1981 is incorrect; 2) she asserts that she has alleged sufficient facts to state claims for race discrimination under 42 U.S.C. § 1983 (Claim Five) against Defendant Duffy; and 3) she argues that she has alleged sufficient facts to state a race discrimination claim under FEHA (Claim Nine) against the District.

As to Claim Five, Plaintiff asks that she be given leave to amend if the Court finds that the allegations are insufficient to establish racial animus on the part of Defendant Duffy, stating that she can allege that during Duffy's three-year tenure with the District, between 2017 and 2020, the number of Black managers employed by the District decreased dramatically and that the decisions to demote Black managers were made by Duffy in his role as superintendent of the District. According to Plaintiff, she could also allege that prior to being hired by the District, when Duffy was employed by Oakland Unified School District, he was accused of demonstrating hostility towards Black women's leadership and refusing to promote Black women to leadership positions. Plaintiff also asks for leave to amend Claim Nine if the Court finds her allegations of racial discrimination by the District fall short and, in a footnote, she asks for leave to amend her complaint to change the claims asserted in Claims One and Six to base them on Title VII instead of Title VI.[3]

---

[3] In their Reply, Defendants did not oppose Plaintiff's request to replace her Title VI claims with Title VII claims. Therefore, the Court GRANTS Plaintiff's request for leave to amend the complaint to add those claims.

## III.   ANALYSIS

### A.   Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).[4]

### B.  Whether Claims Three and Four Are Adequately Alleged as to Individual Defendants

Plaintiff asserts race discrimination and retaliation claims against the individual defendants under 42 U.S.C. § 1981, which provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). It further provides that the term "make and enforce contracts" in subsection (a) "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Subsection (b) of Section 1981 was added by Congress in 1991 "to bring postformation conduct, including discriminatory termination, within the scope of § 1981[,]" legislatively overruling the Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) that the prior version of Section 1981 did " 'not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations.' " *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting *Patterson*, 491 U.S. at 171). The Supreme Court has found, however, that "while Congress revised *Patterson*'s exclusion of postformation conduct, it let stand *Patterson*'s focus upon contract obligations." *Id.* at 477. "In fact, it positively reinforced that element by including in the new § 1981(b) reference to a 'contractual relationship.' " *Id.* Thus, "[a]ny claim brought under § 1981 . .

---

[4] In her Opposition, Plaintiff cites *Conley v. Gibson*, 355 U.S. 41 (1957) for the standard on granting leave to amend, asserting that "[d]ismissal is only proper if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' ". Opposition at 4 (quoting *Conley*, 355 U.S. at 45-46). That standard was rejected by the Supreme Court over a decade ago in *Iqbal* and *Twombly* in favor of the more stringent standard set forth above. Plaintiff's misstatement of the legal standard has no impact on the Court's conclusions herein, however.

7

. must initially identify an impaired 'contractual relationship,' . . . under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. § 1981(b)). "Such a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts." *Id.* Rather, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* Further, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under [an] existing (or proposed) contract that he wishes 'to make and enforce.' " *Id.* at 479-480.

Here, Plaintiff references her "contract as the Principal" in the SAC, *see* SAC ¶11, but Defendants contend her employment relationship with the District is not contractual in nature – and thus cannot support a Section 1981 claim – because in California, the terms and conditions of public employment are determined by statute, not by contract. This is an issue upon which there is a split of authority in this district. Judge Wilken has characterized the two lines of cases as follows:

> Defendants contend that Plaintiffs cannot satisfy this requirement because, under California law, it is well established that public employment is not held by contract but by statute. *Miller v. State of California*, 18 Cal.3d 808, 813, 135 Cal.Rptr. 386, 557 P.2d 970 (1977). Several district courts have reasoned that a public employee may not state a claim under § 1981 based on the denial of a promotion for this reason. *See e.g., Zimmerman v. City and Cnty. of San Francisco*, 2000 WL 1071830, *10–11 (N.D.Cal.); *Barefield v. California University Bakersfield*, 2006 WL 829122, *4–5 (E.D.Cal.). However, other district courts have held that such claims are actionable. *See e.g., Byrd v. California Superior Court*, 2009 WL 2031761, *7 (N.D.Cal.); *Lukovsky v. City and Cnty. of San Francisco*, 2006 WL 436142, *1–4 (N.D.Cal.), aff'd on other grounds, 535 F.3d at 1044.
>
> The Court is persuaded by the district court's reasoning in *Lukovsky*. There, the district court, addressing a § 1981 claim involving a public employee's promotion denial, applied the three part test established by the Ninth Circuit in *Judie v. Hamilton*, 872 F.2d 919, 922 (9th Cir.1989), to determine whether a contractual relationship exists for purposes of a § 1981 claim. With respect to the third prong of the test, the *Lukovsky* district court found that, even if California law provides that no contractual right exists for promotion in public employment, such law is inconsistent with predominant federal interests that California public employees have recourse under § 1981 for discrimination in promotion. *Id.* at *3 (citing *Sagana v. Tenorio*, 384

8

> F.3d 731, 737 (9th Cir.2004)). Furthermore, the district court noted Congress's 1991 amendment to § 1981, adding a provision that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). With this amendment, the protections under the statute were expanded to include not only the initiation of the employment relationship, but later modifications during the course of employment. Accordingly, the district court held, and this Court agrees, that the discriminatory denial of a promotion to a public employee falls within the amended version of § 1981.

*Hofmann v. City & Cty. of San Francisco*, 870 F. Supp. 2d 799, 807 (N.D. Cal. 2012).

The undersigned agrees with the reasoning of *Hofman* and *Lukovsky* and concludes that Plaintiff's employment by the District involves a contractual relationship under the *Judie* test for the reasons stated in those cases. The Court notes that the case cited by Defendants in support of a contrary conclusion, *Hill v. Alameda Cty. Prob. Dep't,* No. 3:14-CV-04856-CRB, 2015 WL 1408825, at *1 (N.D. Cal. Mar. 27, 2015), did not address the *Judie* test. Therefore, the undersigned does not find the holding in *Hill* on this issue to be persuasive and rejects Defendants' argument that Plaintiff's Section 1981 claims fail to state a claim because she has not alleged facts establishing a contractual relationship for the purposes of Section 1981.

**C.    Whether Claim Five is Adequately Alleged as to Duffy**

Plaintiff asserts a claim of race discrimination under 42 U.S.C. § 1983 and the Fourteenth Amendment Equal Protection Clause as to Defendant Duffy, the District's superintendent. In order to state a claim under § 1983 for "a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (holding that Section 1983 claims based on Equal Protection violations "must plead intentional unlawful discrimination or allege facts that are . . . susceptible of an inference of discriminatory intent.").

As Judge Chen has explained, "[d]ifferential treatment among similarly situated

individuals may provide grounds for an inference of discriminatory intent. *C.H. v. Brentwood Union Sch. Dist.*, No. 21-CV-00196-EMC, 2021 WL 3271169, at *3 (N.D. Cal. July 30, 2021) (citing *Whiting v. Dep't of the California Highway Patrol*, No. EDCV182652CASJEM, 2020 WL 5753231, at *7 (C.D. Cal. Sept. 1, 2020), report and recommendation adopted sub nom. *Whiting v. Dep't of California Highway Patrol*, No. EDCV182652CASJEM, 2020 WL 5750431 (C.D. Cal. Sept. 25, 2020); *Lim v. City & Cnty. of San Francisco*, 2010 WL 1838834, at *5 (N.D. Cal. May 4, 2010)). Thus, for example, the court in *Whiting* court "found that a plaintiff adequately pleaded an equal protection claim where the police-officer defendant stopped the plaintiff, who was Black, in his car several times while ignoring a nearby white driver with a broken car." *Id.* (citing *Whiting*, 2020 WL 5753231 at *7). On the other hand, in *Lim*, "a Filipino American woman inadequately pleaded an equal protection claim on account of her race and gender against the city of San Francisco, where she was denied access to public financing to run for a city board of supervisors seat, while most other candidates received public financing." *Id.* (citing *Lim*, 2010 WL 1838834 at *5). The court in that case explained that the plaintiff did not adequately allege discriminatory intent because " 'nothing in [her] complaint indicate[d] that the other candidates were similarly situated to her,' such as that other candidates had outstanding campaign-finance-related fines owed to the city at the time, as she had, and she did not even allege whether those candidates 'were male or non-Filipino[ ],' the court held that it could not infer any discriminatory intent." *Id*. (citing 2010 WL 1838834 at *5).

In *C.H.*, Judge Chen found that the allegations of racial animus in support of the plaintiff's equal protection claim were insufficient where the plaintiff alleged that a school administrator "singled [him] out on the basis of race" but did not allege "supporting facts sufficient to state a claim of intentional race discrimination." *Id.* In particular, the court noted that the complaint "merely state[d] that C.H. was 'standing' among a group of students, was 'ordered . . . to take off his hoodie sweatshirt,' chose to keep it on because 'he was getting over a cold,' and was then 'grabbed . . . by his hood and dragged backward to his seat.' " *Id.* Even though the plaintiff further asserted in his brief opposing the defendant's motion to dismiss that he was "the only African American student in the group[,]" the court found that "these facts [were] still inadequate

10

to state a plausible claim, as they [did] not suggest that C.H. received differential treatment vis-à-vis similarly situated students." *Id.* The court observed, however, that it might have reached a different conclusion "if, for example, one or more non-Black students similarly refused [the administrator's] request to remove their jackets and were not physically harmed as a result[,]" which "could conceivably provide grounds for the Court to infer discriminatory intent, just as differential treatment to motorists in the same vicinity allowed an inference of discriminatory intent in *Whiting*." *Id.*

Here, Plaintiff alleges in the SAC that Duffy's response to her sharing with her staff information from a meeting with Duffy where certain administrative decisions were discussed was "dramatically different" from his reaction to a White principal's sharing of the same information with his staff. SAC ¶ 17. Her allegations are more specific than the allegations in *Lim* and *C.H.* and establish that Plaintiff and the white principal were similarly situated but that she was treated much less favorably by Duffy, raising a plausible inference that Duffy's reprimand of Plaintiff was motivated by racial animus. Though this conduct did not directly involve the main conduct that is the subject of Plaintiff's claim, namely, her demotion to a teacher position, the Court concludes that it is sufficient to raise a plausible inference that Duffy acted with discriminatory animus when he approved her demotion. Therefore, the Court finds that Claim Five is sufficiently alleged as to Duffy.

### D. Whether Claim Nine is Adequately Alleged as to the District

FEHA makes it an "unlawful employment practice" for any employer "because of the race . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code, § 12940(a). The elements of a FEHA claim for employment discrimination are (1) the employee's membership in a classification protected by the statute; (2) discriminatory animus on the part of the employer toward members of that classification; (3) an action by the employer adverse to the employee's interests; (4) a causal link between the discriminatory animus and the adverse action; (5) damage to the employee, and (6) a causal link between the adverse action and the damage. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal.App.4th 686, 713 (2008).

1    The parties are in agreement that Plaintiff's FEHA claim is governed by the shifting test
2    established in *McDonnel Douglas Corporation* for claims of discrimination asserted under Title
3    VII. *Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v.*
4    *Green*, 411 U.S. 792, 793 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604
5    (1993)). Under that framework, a presumption of discrimination arises where a plaintiff can
6    establish a prima facie case, which generally requires evidence that "(1) he was a member of a
7    protected class, (2) he was qualified for the position he sought or was performing competently in
8    the position he held, (3) he suffered an adverse employment action, such as termination, demotion,
9    or denial of an available job, and (4) some other circumstance suggests discriminatory motive."
10   *Id.* at 355 (citations omitted). Defendants do not dispute that Plaintiff has alleged the first three
11   elements but contends she has not alleged facts to satisfy the last element. The Court disagrees.
12   Plaintiff has alleged that although performing well in her position as Principal she was
13   demoted to a lower-paying job as a teacher and that her position was given to a less qualified
14   white male. In addition, she has alleged facts showing that she was treated less favorably than a
15   similarly situated white Principal by the superintendent on at least one occasion and that her
16   complaints of a racially hostile work environment were ignored and not investigated by the
17   District. At least one administrator allegedly told her that her complaints were unfounded. These
18   allegations are sufficient to raise an inference of a discriminatory motive with respect to Plaintiff's
19   demotion. Therefore, the Motion is DENIED as to Claim Nine.

**IV.    CONCLUSION**

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. The Court dismisses with prejudice Claims One and Six (the Title VI claims); Claim Seven (the Unruh Act claim); Claims Three and Four as to the District only; and Claim Five as to individual Defendants Franco, Shin, Williams and Greenwood. Plaintiff may file an amended complaint

adding claims for race discrimination and retaliation under Title VII, which shall be filed within thirty (30) days.

**IT IS SO ORDERED.**

Dated: April 5, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge